# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DEERFIELD AUTOMOTIVE, LLC,**

      **Plaintiff,**

v.                                                                          Case No: 6:25-cv-1307-PGB-LHP

**HYUNDAI MOTOR AMERICA CORPORATION,**

      **Defendants.**
_____/

## **ORDER**

This cause is before the Court upon Defendant Hyundai Motor America Corporation's ("**Defendant**") Motion to Transfer Venue to the Southern District of Florida. (Doc. 14 (the "**Motion**")). Plaintiff Deerfield Automotive, LLC d/b/a King Hyundai ("**Plaintiff**") filed a response in opposition. (Doc. 17 (the "**Response**")). Upon consideration, the Motion is due to be granted.

**I.      BACKGROUND**

On June 10, 2025, Plaintiff initiated this action by filing its Complaint (Doc. 1-1 (the "**Complaint**")) in the Ninth Judicial Circuit in and for Orange County, Florida. Defendant removed the action to the instant Court on July 14, 2025. (Doc. 1).

As alleged in the Complaint, Plaintiff is a dealer of Hyundai motor vehicles and Defendant is an importer and distributor of such vehicles. (Doc. 1-1, ¶¶ 1–2).

Plaintiff and Defendant are parties to a Hyundai Dealer Sales and Service Agreement (the "**Franchise Agreement**"), "pursuant to which [Plaintiff] operates a dealership for the sale and service of Hyundai Brand motor vehicles" in Deerfield Beach, Florida (the "**Dealership**"). (*Id.* ¶ 3). Defendant's parent company, Hyundai Motor Company ("**HMC**"), manufactures both Hyundai and Genesis motor vehicles. (*Id.* ¶ 9). Initially, Defendant produced Genesis motor vehicles as part of the Hyundai line-make and thus permitted Hyundai dealers such as Plaintiff to sell these vehicles. (*Id.* ¶ 11). However, in 2017, HMA announced that it would create a subsidiary of HMA, Genesis Motor America, LLC ("**GMA**"), that would become the sole distributor of Genesis motor vehicles. (*Id.* ¶¶ 10, 12–13).

Ultimately, HMA's plan was thwarted when the Florida Department of Highway Safety and Motor Vehicles ("**FDHSMV**") rejected its application for a license to distribute Genesis motor vehicles in Florida, finding the plan violated Florida Statute § 320.6415. (*Id.* ¶¶ 15–16). That statute required HMA to "offer to every existing Florida Hyundai dealer a Genesis Dealer Sales and Service Agreement containing the same terms as existed in their respective Hyundai Dealer Sales and Service Agreements." (*Id.* ¶ 17). GMA subsequently agreed to offer such agreements to all existing Hyundai dealers in Florida, and FDHSMV thus granted GMA the sought-after license. (*Id.*).

Accordingly, Plaintiff and GMA executed a Genesis Dealer Agreement that became effective on December 17, 2018. (*Id.* ¶ 18). However, Plaintiff alleges that:

2

> Approximately one year later, HMA announced a radical program [(the "**Accelerate Program**")] unlawfully designed to accomplish indirectly what HMA and GMA were prohibited previously from achieving directly—taking the Genesis line-make from the Hyundai dealer body, awarding the Genesis line-make to only certain selected dealers, and mandating that those selected dealers sell and service Genesis motor vehicles in stand-alone facilities.[1]

(*Id.*). Additionally, in February 2020, Defendant implemented a complimentary maintenance program (the "**Complimentary Maintenance Program**") that applies to sales of new Hyundai motor vehicles (*Id.* ¶ 50). Under the Complimentary Maintenance Program, Hyundai dealers such as Plaintiff are required to perform certain maintenance services on such vehicles for three years or 36,000 miles. (*Id.*). However, Plaintiff alleges the reimbursement rates set by Defendant are substantially below the rates permitted by law. (*Id.* ¶ 53).

Consequently, in Counts I through VII of the Complaint, Plaintiff brings claims alleging Defendant's Accelerate Program violates various subsections of Florida Statute § 320.64. (Doc. 1-1, ¶¶ 54–118). Additionally, in Count VIII, Plaintiff asserts the reimbursement rates Defendant has established under its Complimentary Maintenance Program violate Florida Statute § 320.696. (*Id.* ¶¶ 119–28). Finally, in Count IX, Plaintiff asserts that Defendant has breached the Franchise Agreement through its implementation of the Accelerate Program and its Complimentary Maintenance Program. (*Id.* ¶¶ 129–33).

---

[1] For example, Plaintiff avers that the Accelerate Program "unlawfully conditions a majority of dealers['] gross margin on whether a dealer complies with or attains various unilaterally set objectives or criteria, including the imposition of unreasonable facility requirements costing dealers millions of dollars to implement and the elimination of the Genesis line[-]make from the all Hyundai sales and service facility." (Doc. 1-1, ¶ 19).

Now, Defendant asks the Court to transfer this action to the Southern District of Florida. (Doc. 14). Plaintiff has filed a response in opposition and the matter is thus ripe for review. (*See* Doc. 17).

## II. STANDARD OF REVIEW

A motion to transfer venue within the federal court system is governed by 28 U.S.C. § 1404(a). *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 57–58 (2013). Under § 1404(a), a district court may transfer a civil action "[f]or the convenience of the parties and witnesses, [and] in the interest of justice . . . to any district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

When applying this statute, courts undertake a two-step analysis. *Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1241 (M.D. Fla. 2016) (citations omitted). First, the court must determine "whether the case could have been filed in the proposed district." *Id.* Second, the court must assess "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." *Id.* (quoting *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000)). In analyzing the second prong, courts in the Eleventh Circuit traditionally consider the following factors:

> 1) the convenience of the witnesses; 2) the location of relevant documents and the ease of access to sources of proof; 3) the convenience of the parties; 4) the locus of operative facts; 5) the availability of process to compel unwilling witnesses; 6) the relative means of the parties; 7) a forum's familiarity with the governing law; 8) the weight accorded a plaintiff's choice of forum; and 9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).

A court will not disturb a plaintiff's choice of venue unless the movant can demonstrate that the choice is outweighed by other considerations. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Therefore, the movant carries the burden of establishing that the case should be transferred to the suggested venue in the interest of convenience and justice. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Ultimately, the decision to transfer a matter is within the sound discretion of the district court. *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982).

### III. DISCUSSION

Defendant moves for a transfer of this case to the Southern District of Florida, citing that "[n]othing about the case—not the parties, claims, witnesses, or evidence—has any connection to the Middle District of Florida." (Doc. 14, p. 1). Defendant further notes that Judge Gregory A. Presnell, of this Division and District, recently granted its motions to transfer two cases that are closely related to the instant case to the Southern District of Florida. (*See id.* at p. 2).

First, on May 29, 2025, Judge Presnell granted Defendant's motion to transfer venue in *Potamkin Hyundai, Inc. v. Hyundai Motor America Corp.*, No. 6:25-cv-370-GAP-UAM (filed Mar. 3, 2025) (the "**Potamkin HMA Action**"). The Potamkin HMA Action bears stark similarities to the instant case. Plaintiff in

the Potamkin HMA Action (the "**Potamkin plaintiff**") was a Hyundai dealer operating a dealership in the Southern District of Florida. (No. 6:25-cv-370-GAP-UAM, Doc. 29, p. 2). The Potamkin plaintiff sued Defendant in Orange County, Florida, and Defendant removed the action to the instant Division of this District. (*Id.* at pp. 1–2). The Potamkin plaintiff "alleg[ed] eight claims under Florida law related to the parties' Hyundai Dealer Sales and Service Agreement, Plaintiff's ability to distribute Hyundai and Genesis vehicles, Defendant's Accelerate Performance Bonus Program, and Defendant's Complimentary Maintenance Program reimbursements." (*Id.*). The Potamkin plaintiff's remaining claim was for an "alleged breach of the dealer agreement." (*Id.* at p. 11).

After applying the § 1404 factors, Judge Presnell concluded that these factors strongly supported transfer of the Potamkin HMA Action to the Southern District of Florida. (*See generally* No. 6:25-cv-370-GAP-UAM, Doc. 29 (the "**Potamkin HMA Transfer Order**")). Further, on June 6, 2025, Judge Presnell transferred a related action filed by the Potamkin plaintiff against GMA, *Potamkin Hyundai, Inc. v. Genesis Motor America, LLC*, No. 6:25-cv-374-GAP-RMN (the "**Potamkin GMA Action**"), to the Southern District of Florida for consideration with the Potamkin HMA Action. (No. 6:25-cv-374-GAP-RMN, Doc. 28 (the "**Potampkin GMA Transfer Order**")). Of note, every attorney of record in the instant case also served as counsel in both the Potamkin HMA Action and the Potamkin GMA Action (collectively, the "**Potamkin Actions**").

6

Despite the foregoing, in its Response, Plaintiff argues that Defendant has not met its burden of establishing that transfer of venue is appropriate. (*See generally* Doc. 17). For the reasons set forth below, this Court disagrees and finds that the case should be transferred to the Southern District of Florida under § 1404.

### A.   Sufficiency of the Proposed Venue

Although Plaintiff does not consent to the requested transfer, Plaintiff does not expressly dispute that venue of this action is proper in the Southern District of Florida. (Doc. 17). Nonetheless, the Court must independently verify that the Southern District of Florida has jurisdiction and offers a proper venue. *See Delorenzo v. HP Enter. Servs., LLC*, 79 F. Supp. 3d 1277, 1280 (M.D. Fla. 2015) (citation omitted) (noting that, absent unanimous consent to transfer, § 1404(a) requires a proposed transferee court to have both personal and subject matter jurisdiction in addition to offering a proper venue).

The Southern District of Florida has personal jurisdiction over Defendant because it is the party requesting the transfer. (Doc. 14); *see Delorenzo*, 79 F. Supp. 35 at 1280. Moreover, under 28 U.S.C. § 1332, the Southern District of Florida has subject matter jurisdiction over Plaintiff's claims because they are before the Court pursuant to the federal district courts' diversity jurisdiction. (Doc. 1). Finally, venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2), as the Dealership is located within Broward County, which falls within the Southern District of Florida. Accordingly, the Southern District of Florida is "a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* § 1391(b)(2).

Thus, this "case could have been filed" in the Southern District of Florida because it has jurisdiction and offers a proper venue. *See Nat'l Tr. Ins. Co.*, 223 F. Supp. 2d at 1241–42. As such, the first step of the § 1404(a) analysis is satisfied. *See id.*

### B.   The Interests of Convenience and Justice

#### *1.   The Convenience of Witnesses*

As to this factor, Defendant contends that "most, if not all, of the relevant . . . witnesses reside [in] or regularly conduct business in the Southern District of Florida." (Doc. 14, p. 7). For example, Defendant cites that Plaintiff's "President, Russell King, and its VP and Treasurer, Jason Frieder," whom Defendant notes are "likely to be called as witnesses in this case," are each located in the Southern District of Florida. (*Id.*). Moreover, Defendant confirms it "is not aware of *any* potential witnesses, documents, or facts connecting this dispute to the Middle District of Florida." (*Id.*). In its Response, Plaintiff notes that all of the fact witnesses in this matter are employees of the parties, and "none of the [*Defendant*] employee witnesses reside in either the Southern District or Middle District" of Florida. (Doc. 17, p. 7). Plaintiff additionally asserts that Defendant has not provided sufficient detail regarding the witnesses in the Southern District of Florida to support this factor. (*Id.* at pp. 6–8).

Although the "convenience of witnesses" factor is typically considered an important factor in the § 1404 analysis, its "significance is diminished" when the subject witnesses "are employees of a party and their presence at trial can be obtained by that party." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010). Further "vague statements about the convenience of unknown and unnamed witnesses [are] insufficient to convince' a court to transfer venue." *Combs. v. Fla. Dep't. of Corrs.*, 461 F. Supp. 3d 1203, 1209 (N.D. Fla. 2020) (quoting *Smith v. Colonial Penn Ins. Co.*, 943 F. Supp. 782, 784 (S.D. Tex. 1996)).

The significance of this factor is diminished in this case, since neither party has identified any nonparty witnesses who will testify at trial. (Docs. 14, 17). However, Defendant's Motion highlights what is apparent from the underlying facts of this case—namely, that considering the location of the Dealership, there are likely to be many witnesses in this matter with close ties to the Southern District of Florida. (*See* Doc. 14, pp. 6–8). While Defendant does not provide great specificity regarding such witnesses, "Plaintiff does not rebut 'the contention that the bulk of the relevant witnesses in Florida are located in the' [Southern District of Florida]." Potamkin Transfer Order, p. 6 (quoting *Smith v. FAMU Board of Trustees*, 6:24-cv-457-PGB-RMN, 2024 WL 4150769, at *4 (M.D. Fla. Sept. 11, 2024)). Moreover, the Court notes that Defendant has provided "the only specific evidence presented by either party regarding possible witnesses . . . ." *Trinity*, 761

9

F. Supp. 2d at 1328–29. Under the circumstances, this factor "tilts, if at all," in favor of transfer. *Id.* at 1329.

### 2. *The Location of Relevant Documents and Ease of Access to Sources of Proof*

In assessing this second factor, the Court looks to the "ease of access to sources of proof." *See Manuel*, 430 F.3d at 1135 n.1. "As to photographic and documentary evidence, in light of current technology that affords parties the ability to transmit rapidly large volumes of data even to remote locations, courts tend to give this factor relatively little weight." *Combs*, 461 F. Supp. 3d at 1210 (collecting sources).

Defendant contends this factor weighs in favor of transfer, citing the Dealership's presence in the Southern District of Florida and that Defendant is unaware of any evidence residing in the instant District. (Doc. 14, pp. 6–8). Plaintiff asserts this factor is neutral as discovery can be conducted electronically. (Doc. 17, p. 10). Though Plaintiff's point is well-taken, this consideration is already baked into the weight afforded to this factor in the § 1404 analysis. *See Combs*, 461 F. Supp. 3d at 1210. To the extent that the Dealership where the subject programs were implemented is found within the Southern District of Florida, and neither party has pointed to the existence of any relevant evidence in the instant District, this factor weighs in favor of transfer. *See also* Potamkin GMA Transfer Order, p. 8 (considering the same argument by the Potamkin plaintiff and finding that "the fact that Plaintiff's [principal place of business] is located in the [Southern District

10

of Florida], and that it has made no showing that any such documentary sources of proof are located in the [Middle District of Florida]—or anywhere other than its [principal place of business]—tips the balance slightly in favor of transfer for this factor." (citation omitted)).

### 3. *The Convenience of the Parties*

This factor "concerns the appearance of employees at court, and, to some extent, the appearance of counsel." *Trinity*, 761 F. Supp. 2d at 1328. However, "[o]f the factors considered on a transfer motion, the location of counsel is entitled to the least consideration." *Meterlogic, Inc. v. Copier Sols, Inc.*, 185 F. Supp. 2d 1292, 1304 (S.D. Fla. 2002).

Plaintiff and its counsel each have ties to the Southern District of Florida. Plaintiff's principal place of business is in the Southern District of Florida. (Doc. 1-1, ¶ 1). While the office of Plaintiff's counsel is in the Middle District of Florida, counsel also has an office in the Southern District of Florida. (Doc. 14, pp. 8–9; *see* Doc. 17, pp. 10–11). Further, Plaintiff's counsel has recently filed suit in the Southern District of Florida and is now litigating the Potamkin Actions in that District. (Doc. 14, pp. 8–9). By contrast, neither Defendant nor its counsel have ties to the instant District. Defendant is incorporated in California and has its principal place of business in that state. (Doc. 1-1, ¶ 2). Further, Plaintiff highlights that "none of [Defendant's employees] who have an interest in this proceeding are . . . in Florida at all." (Doc. 17, p. 10). Plaintiff also cites that lead counsel for Defendants in this case are based outside of Florida. (*Id.*). However, defense

11

counsel notes that they have offices in Miami, "making trial more convenient in the Southern District of Florida." (Doc. 14, p. 8). On balance, this factor weighs in favor of transfer.

### 4. The Locus of Operative Facts

"The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Harvard v. Inch*, 408 F. Supp. 3d 1255, 1262 (N.D. Fla. 2019) (quoting *Nat'l Tr. Ins. Co.*, 223 F. Supp. 3d at 1245). "In determining the locus of operative facts, the court must look at the site of the events from which the claim arises." *Id.* (quoting *Nat'l Tr. Ins. Co.*, 223 F. Supp. 3d at 1245).

Defendant asserts that the Southern District of Florida is the locus of operative facts, citing that the Dealership is in that District, and that "[Plaintiff's] claims relate to the operation of that [D]ealership, and, in particular[,] the effect of certain Hyundai programs on its [D]ealership . . . ." (Doc. 14, pp. 6–7). Plaintiff asserts that this factor is neutral, and that there is "no specific locus of operative facts" since Defendant's subject programs were implemented nationwide. (Doc. 17, p. 11). Judge Presnell, when confronted with the identical arguments in the Potamkin HMA Action, found the Southern District of Florida to be the locus of operative facts. Potamkin HMA Transfer Order, pp. 7–8 (emphasizing that "Plaintiff is suing here because of the effect of nationwide programs *on its dealership in Miami Lakes*"). This Court agrees, and thus finds this factor weighs in favor of transfer.

    5. *The Availability of Process to Compel Unwilling Witnesses*

The parties do not identify any unwilling witnesses. Consequently, the Court finds this factor to be neutral in its analysis. *See Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1281 (S.D. Fla. 2020) (quoting *Legg v. Quicken Loans, Inc.*, No. 14-61116-CIV, 2015 WL 13753742, at *3 (S.D. Fla. Mar. 6, 2015) (determining that the fifth factor "does not weigh in either party's favor at this early stage" where "[n]either party has identified any witnesses that are potentially unwilling to participate at trial and thus the availability of process to compel the attendance of unwilling witnesses is a non-issue")).

    6. *The Relative Means of the Parties*

Neither party has asserted that this factor weighs in favor of either forum. (Doc. 17, p. 12; *see also* Doc. 14). Accordingly, the Court finds this factor to be neutral as to transfer.

    7. *The Forum's Familiarity with the Governing Law*

Similarly, neither party has argued this factor favors either forum. (Doc. 17, p. 12; *see also* Doc. 14). Further, as Plaintiff notes, "[t]his case involves the application of Florida law such that each [D]istrict would be equally familiar with the governing law." (Doc. 17, p. 12). The Court thus finds this factor to be neutral as to transfer.

    8. *The Weight Accorded to a Plaintiff's Choice of Forum*

Ordinarily, a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*,

74 F.3d 253, 260 (11th Cir. 1996) (citation omitted). "However, that choice alone, without more, is not determinative, especially when the other considerations weigh strongly in favor of transferring venue." *Byrd Bros., Inc. v. Weinstein*, No. 3:05-cv-294-J-20MCR, 2006 WL 8439168, at *2 (M.D. Fla. Feb. 27, 2006). Moreover, "when a plaintiff is not a resident of the forum district . . . courts accord plaintiff's choice of a forum less weight." *Combs*, 461 F. Supp. 3d at 1214 (collecting sources). "Similarly, when the conduct at issue did not occur in plaintiff's chosen forum, courts give less deference to plaintiff's desired forum." *Id.* (collecting sources).

Here, there is no connection between Plaintiff's choice of forum and the events underlying the cause of action. (*See generally* Doc. 1-1). Likewise, Plaintiff is not a resident of this District, and indeed, Plaintiff's principal place of business is in the Southern District of Florida. (*Id.* ¶ 1). Under these circumstances, Plaintiff's choice of forum is entitled to relatively limited weight. *See Combs*, 461 F. Supp. 3d at 1214.

Moreover, as was the case in the Potamkin HMA Action, the lone reason given by Plaintiff for filing this case in the instant District is that "all of counsel appearing on behalf of [Plaintiff] in this matter are in the Middle District making the Middle District more convenient for [Plaintiff]." (Doc. 17, p. 10; *see* Potamkin HMA Transfer Order, p. 13). As Judge Presnell found in that case, "[w]hen juxtaposed against nearly every other factor of convenience, judicial efficiency, and fairness pointing to the [Southern District of Florida] as 'a ***better*** location to hear the dispute'—and considering that Plaintiff's counsel are voluntarily litigating

14

similar cases against the same defendant[] in the SDFL—any inconvenience to Plaintiff's counsel is clearly outweighed." Potamkin HMA Transfer Order, p. 13 (first quoting *Combs*, 461 F. Supp. 3d at 1207 (emphasis added); then citing *Byrd Bros.*, 2006 WL 8439168, at *2). As such, the Court accords the requisite deference to Plaintiffs' choice of forum, but as discussed herein, this deference is "clearly outweighed by other considerations." *See Robinson,* 74 F.3d at 260.

### 9. *Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances*

The interests of justice factor in the § 1404 analysis "relates to the efficient administration of the court system." *Combs*, 461 F. Supp. at 1215 (quoting *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010)). "Because the 'interest of justice' factor is a distinct component of the § 1404(a) analysis, it 'may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.'" *Id.* (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986)).

Transfer of this action would benefit judicial economy considering there are multiple related cases pending in the Southern District of Florida. Indeed, not only have the Potamkin Actions both been transferred to the Southern District of Florida, but Judge Presnell transferred the Potamkin Actions, in part, due to the pendency of *additional* related actions in that District. *See, e.g.*, Potamkin HMA Transfer Order, pp. 9–12 (finding that the related cases pending in the Southern District of Florida and the Potamkin HMA Action "are obviously connected and it

15

is clear that proceeding simultaneously in two different forums risks prejudice to the parties through inconsistent rulings and outcomes."). Thus, based on the totality of the circumstances, this factor weighs in favor of transfer.

**IV.    CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Transfer Venue to the Southern District of Florida (Doc. 14) is **GRANTED**.

2. The Clerk of Court is **DIRECTED** to transfer this case to the United States District Court for the Southern District of Florida for all further proceedings and to thereafter close the file.

**DONE AND ORDERED** in Orlando, Florida on October 10, 2025.

*[Signature]*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties